T.C. Memo. 2003-60

UNITED STATES TAX COURT

CHERYL D. FLATHERS, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13037-02L.                    Filed March 4, 2003.

Cheryl D. Flathers, pro se.

Rollin G. Thorley, for respondent.

MEMORANDUM OPINION

CHIECHI, Judge:  This case is before the Court on respondent's motion for summary judgment and to impose a penalty under section 6673 (respondent's motion).[1]  We shall grant respondent's

---

[1]All section references are to the Internal Revenue Code in effect at all relevant times.  All Rule references are to the Tax Court Rules of Practice and Procedure.

motion.

## Background

The record establishes and/or the parties do not dispute the following.

Petitioner resided in Las Vegas, Nevada, at the time she filed the petition in this case.

On or about March 17, 1999, petitioner filed a Federal income tax (tax) return for her taxable year 1998 (1998 return). In her 1998 return, petitioner reported total income of $0, total tax of $0, and claimed a refund of $4,704.60 of tax withheld. Petitioner attached to her 1998 return Form W-2, Wage and Tax Statement, reporting wages, tips, and other compensation of $47,554.71. Petitioner also attached a two-page document to that return (petitioner's attachment to her 1998 return). That document stated in pertinent part:

> I, Cheryl Dawn Flathers, am submitting this as part of my 1998 Income Tax Return, even though I know that no section of the Internal Revenue Code:
>
> 1) Establishes an income tax "liability [sic]: as, for example, Code Sections 4401, 5005, and 5703 do with respect to wagering, alcohol, and tobacco taxes;
>
> 2) Provides that income taxes "have to be paid on the basis of a return"-as, for example, Code Sections 4374, 4401(c), 5061(a) and 5703(b) do with respect to other taxes; I am filing anyway because I know the government has prosecuted others for failing to file income tax forms by (erroneously) invoking Code Sections 7201 and 7203. Therefore, this return is not being filed voluntarily but is being filed out of fear that if I did not file this

return I could also be (illegally) prosecuted for failing to file an income tax return for the year 1998.

3) In addition to the above, I am filing even though the "Privacy Act Notice" as contained in a 1040 booklet clearly informs me that I am not required to file. It does so in at least two places.
a) In one place, it states that I need only file a return for "any tax" I may be "liable" for. Since no Code Section makes me "liable" for income taxes, this provision notifies me that I do not have to file an income tax return.
b) In another place, it directs me to Code Section 6001. This section provides, in relevant part that "Whenever in the judgment of the Secretary it is necessary, he may require any person **by notice served on such person;** or by regulations, to make such returns, render such statements, or keep such records, as the Secretary deems sufficient to show whether or not such person is liable far [sic] the tax under this title." Since the Secretary of the Treasury did not "serve" me with any such "notice" and since no legislative regulation exists requiring anyone to file an income tax return, I am again informed by the "Privacy Act Notice" that I am not required to file an income tax return.

      *       *       *       *       *       *       *

7) It should also be noted that I had "zero" income according to the Supreme Court's definition of income * * * since in **Merchant's Loan & Trust C.V. Smlietanka** [sic], 255 U.S. 509, (at pages 518 & 519) that court held that "The word (income) must be given the same meaning in all of the Income Tax Acts of Congress that was given to it in the Corporation Excise Tax Act of 1909." Therefore, since I had no earnings in 1998, that would have been taxable as "income" under the Corporation Excise Tax Act of 1909, I can only swear to having "zero" income in 1998. Obviously, since I know the legal definition of "income"; if I were to swear to having received any other amount of "income" I would be committing perjury * * *. Therefore, not wishing to commit perjury * * *, I can

only swear to having "zero" income for 1998.

On June 14, 1999, respondent paid petitioner the $4,704.60 refund that she claimed in her 1998 return plus interest thereon.

On February 4, 2000, respondent issued to petitioner a notice of deficiency (notice) with respect to her taxable year 1998, which she received. In that notice, respondent determined a deficiency in, and an accuracy-related penalty under section 6662(a) on, petitioner's tax for her taxable year 1998 in the respective amounts of $5,969 and $1,177.

Petitioner did not file a petition in the Court with respect to the notice relating to her taxable year 1998. Instead, on April 15, 2000, in response to the notice, petitioner sent a letter (petitioner's April 15, 2000 letter) to the Internal Revenue Service. That letter stated in pertinent part:

> Your Deficiency Notice dated February 4, 2000.
>
> First and foremost, be advised that this alleged deficiency has been created out of thin air by the IRS from a return which I submitted in a timely manner, a return which was reviewed by the IRS and a refund issued, including interest paid for the delay in re-funding the amount to me. The IRS now attempts to extort penalties and interest on top of the amount duly refunded to me.
>
> According to your "Deficiency Notice" of the above date (cover sheet [page 1 of notice with respect to petitioner's taxable year 1998] attached), there is an alleged deficiency with respect to my 1998 income tax return of $7546.09, and if I wanted to "contest this deficiency before making payment," I must "file a petition with the United States Tax Court." Before I file, pay, or do anything with respect to your "Notice" I must first establish whether or not it was sent

pursuant to law, whether or not it has the "force and effect of law," and whether you had any authority to send me the Notice in the first place.

    \*        \*        \*        \*        \*        \*        \*

Let me further point out that IRS Code Sections 6001 and 6011 (as identified in the 1040 Privacy Act) notifies me that I need only "comply with regulations." **Nothing in the Privacy Act Notice or in the above statutes informs me that I have to "comply" with, or pay attention to, letters and/or alleged "determinations" sent to me by various and sundry employees of the IRS**.

      Please note that Section 6212 states that "If the <u>Secretary</u> determines that there is a deficiency in respect of any tax ... he is authorized to send notice of such deficiency etc., etc., etc." However, the "Notice" I received was not sent by the Secretary but by Deborah S. Decker who is identified as being the Director of the IRS Service Center in Ogden, Utah, and I have no way of knowing whether he/she has been delegated by the Secretary to send out such notices on the Secretary's behalf. So before I do anything at all with respect to your "Notice", I would have to see a Delegation Order from the Secretary of the Treasury delegating Deborah S. Decker the authority to send out Deficiency Notices.

      In addition, I would also like you to send me (or identify for me) the <u>legislative</u> regulations that you claim implement Code Sections 6212 and 6213. I have also attached an excerpt from the IRS Procedures Manual (MT 1218-196, at page P-6-40) which points out that the IRS is required to "make available to all taxpayers comprehensive, accurate, and timely information on the requirements of tax law and regulations." So, pursuant to this provision from your Procedures Manual, I am asking that you identify ("make available") for me the legislative regulations that you claim implement both Code Section 6212 and 6213 - since I haven't been able to locate them.

On July 17, 2000, respondent assessed a frivolous return penalty under section 6702 regarding petitioner's 1998 return.

On July 24, 2000, respondent assessed petitioner's tax, as well as a penalty under section 6662(a) and interest as provided by law, for her taxable year 1998. (We shall refer to those assessed amounts, as well as interest as provided by law accrued after July 24, 2000, as petitioner's unpaid liability for 1998.)

On July 24, 2000, respondent issued to petitioner a notice of balance due with respect to petitioner's unpaid liability for 1998.

On October 12, 2000, respondent issued to petitioner a final notice of intent to levy and notice of your right to a hearing (notice of intent to levy) with respect to the frivolous return penalty under section 6702 regarding her 1998 return.

On May 30, 2001, respondent issued to petitioner a notice of Federal tax lien and your right to a hearing (notice of tax lien) with respect to both petitioner's unpaid liability for 1998 and the frivolous return penalty under section 6702 regarding her 1998 return.

On or about June 25, 2001, in response to the notice of intent to levy and the notice of tax lien, petitioner filed Form 12153, Request for a Collection Due Process Hearing (Form 12153), and requested a hearing with respondent's Appeals Office (Appeals Office). Petitioner attached, inter alia, a seven-page document to her Form 12153 (petitioner's attachment to her Form 12153). That document stated in pertinent part:

1.  **VERIFICATION FROM THE SECRETARY.**
First of all, I expect you to have at the CDP hearing "verification from the Secretary that the requirements of any applicable law or administrative procedure have been met". That is the specific statement from the Secretary (or his delegate) that THE LAW **requires** you to have. Don't tell me at the CDP hearing that in lieu of your having that specific statement from the Secretary, you have some IRS transcript or printout that "I may not understand". * * *

2.  **PROOF OF ASSESSMENT AND COPY OF RETURN SHOW-
    ING OWED TAXES**
Pursuant to Code Section 6201(1), before I can owe any income taxes there has to be an assessment based on a "return or list". I filed a return showing no taxes due, in fact a return that showed a refund **for which a refund check was issued by the Internal Revenue Service, PLUS INTEREST**! Therefore, I do not see how the IRS could have made a <u>lawful assessment</u> from a return showing no income taxes due and owing unless the IRS prepared **another** 1040 showing a different amount due. * * *

   *     *     *     *     *     *     *

3.  **A COPY OF FORM 17, STATUTORY NOTICE OF DEFI-
    CIENCY**
    I have never received a Statutory Notice of Deficiency, Form 17, for payment of any 1998 income taxes.

   *     *     *     *     *     *     *

4.  **I CLAIM THERE IS NO UNDERLYING, STATUTORY
    LIABILITY IN CONNECTION WITH THE INCOME TAXES
    AT ISSUE.**
    I am challenging the "existence" of the underlying tax liability as the law (Sec. 6330(c)(2)(B)) and regulation (301.6330-1T-(3)) specifically permit me to do. * * *

   *     *     *     *     *     *     *

5.  **I CLAIM THERE IS NO STATUTE REQUIRING ME "TO PAY"
    THE INCOME TAXES AT ISSUE.**
    * * * it is my belief that there is no law requir-

ing me "to pay" income taxes * * *

**6.** **NO LAW AUTHORIZES THE IRS TO CLAIM THAT I OWE MORE IN INCOME TAXES THAN THE "ZERO" I REPORTED ON MY 1998 INCOME TAX RETURN.**

* * * it is my contention that no law authorizes the Secretary (let alone any IRS agent) to determine that I owe more in income taxes that the "zero" I reported on my 1998 income tax return. * * * [Reproduced literally.]

On April 12, 2002, a settlement officer with respondent's Appeals Office (settlement officer) sent petitioner a letter. That letter stated in pertinent part:

I have scheduled the Collection Due Process hearing you requested on this case for the time and date shown above [May 16, 2002]. * * *

Your request for a due process hearing was timely for the Letter 3172, Notice of Federal Tax Lien Filing, issue for the Form 1040 taxes for 1998 and for the civil penalty assessment for 1998. Your request for a due process hearing for the Letter 1058, Notice of Intent to Levy, on the civil penalty assessment for 1998 was not timely and therefore, you are entitled to an equivalency hearing on this matter.

Appeals' jurisdiction to hear your case is specified in the Internal Revenue code, Sections 6320 and 6330, and the related federal regulations. Appeals will consider the appropriateness of the proposed collection action, spousal defenses, and collection alternatives. If you received a statutory notice of deficiency * * * you may not raise as an issue the amount or existence of the underlying assessment. * * *

I am also enclosing Forms 2866, Certificate of Official Record, and Forms 4340, Certificate of Assessment for the Form 1040 taxes for 1998 and for the civil penalty assessment under IRC §6702 for 1998. These documents meet the verification requirements under IRC §6330(c)(1). Your request for additional information should be made under the Freedom of Information Act through the Disclosure Officer located at the Internal Revenue Service, 210 E. Earll, Phoenix, Arizona 85012.

I have reviewed the correspondence you attached to your request for the collection due process hearing and would like to point out that the courts have previously ruled against your arguments, and in some instances, have imposed sanctions.  I have verified the validity of the assessments through the review of the complete computer transcripts, the tax return file and related workpapers.  I have no further legal obligation to consider any challenge to the validity of the assessment in the absence of independent proof that the assessment was defective in some manner.  I am hopeful that you wish to discuss legitimate issues and alternatives for resolving your case at the upcoming hearing.  I will have the original tax return for 1998 available for your review at the hearing, as well as the civil penalty documentation.

On May 3, 2002, respondent's settlement officer sent petitioner another letter (settlement officer's May 3, 2002 letter).  That letter stated in pertinent part:

I am writing to you regarding the upcoming collection due process hearing set for May 16, 2002 at 3:00 p.m. at the Las Vegas Appeals Office.

You previously indicated in your correspondence that you intended to audio record the hearing and have a court reporter present.  There has been a recent change in this practice for hearings before Appeals.  Effective immediately audio and stenographic recordings will no longer be allowed on Appeals cases.

The recording of hearings has always been discretionary for Appeals under IRC §7521.  Pursuant to a recent decision all audio and stenographic recordings will be eliminated.  You may still have a witness present at the hearing; however, this witness may not represent you or negotiate for you.

On May 7, 2002, in response to the settlement officer's May 3, 2002 letter, petitioner sent the settlement officer a letter (petitioner's May 7, 2002 letter).  That letter stated in pertinent part:

I am in receipt of your letter of May 3, 2002, in which you attempt to deny me the right to record my hearing under IRC section 7521.

\*        \*        \*        \*        \*        \*        \*

Who made this "recent decision", where is the documentation?  Where is the proof of legislative mandate providing authority to make this change?  Furthermore, under whose authority is my Constitutional right to preserve testimony for myself being truncated?  After all, I require an <u>accurate record</u> of who said what and when.

The code quoted [section 7521] deals with "Procedures involving taxpayer interviews".  Are you then stating, by quoting this code section, that you are only conducting an "interview" and not a "hearing" as is my right under the law?  You are labeled as a "settlement officer", not an "appeals officer".  If you are unable to show authority as an appeals officer, then I require that you provide an appeals officer at the hearing who has the authority to impartially decide the issues at hand.  If this is an "interview" which is conducted by exam and audit and for which the code you quote would be correct, then I am not receiving a hearing.  If you claim this is a hearing, then an appeals officer, with appropriate identification will need to be present to conduct a true hearing, and the code you quote does not apply.

On May 13, 2002, in response to petitioner's May 7, 2002 letter, respondent's settlement officer sent petitioner a letter (settlement officer's May 13, 2002 letter).  That letter stated in pertinent part:

I am in receipt of your letter dated May 7, 2002 regarding the change in procedures for the audio recording or stenographic recording of Appeals hearings.  I am enclosing a copy of the memorandum dated May 2, 2002 per your request for documentation of this change.

This will be a "hearing" and as a settlement officer I have the same authority as an appeals officer to impartially decide the issues at hand, as you stated in your

letter.

The copy of the memorandum referred to in the settlement officer's May 13, 2002 letter, which the settlement officer enclosed with that letter, stated in pertinent part:

> Effective immediately, audio and stenographic recordings will no longer be allowed on Appeals cases. Taxpayers and/or representatives who have already requested such recordings will be informed of the change in practice immediately, and advised that their request cannot be allowed.
>
> **BACKGROUND**
>
> Prior to enactment of IRC 7521, Service Compliance functions voluntarily allowed audio recordings. Appeals decided to follow this practice at that time. IRC 7521, enacted in 1988, provided for the allowance of audio recordings of conferences relative to the determination or collection of a tax, between the taxpayer and the Internal Revenue Service, provided that the Service was given at least ten (10) days advance notice of the taxpayer's intent to record the conference.
>
> Although Appeals makes liability and collectibility determinations, Appeals' procedures differ from Examination and Collection function contacts that are not discretionary for the taxpayer. Contact with Appeals is discretionary for the taxpayer, and as such, recording has always been discretionary for Appeals. * * *

On May 16, 2002, respondent's settlement officer held an Appeals Office hearing with petitioner with respect to the notice of tax lien.[2] Although petitioner knew that the Appeals Office no longer allowed audio recordings of Appeals Office hearings,

---

[2]On May 16, 2002, respondent's settlement officer also held an equivalent hearing with petitioner with respect to the notice of intent to levy.

petitioner secretly made an audio recording of her Appeals Office hearing.  At the Appeals Office hearing, the settlement officer gave petitioner Form 4340, Certificate of Assessments, Payments, and Other Specified Matters (Form 4340), with respect to her taxable year 1998.

On July 11, 2002, the Appeals Office issued to petitioner a notice of determination concerning collection action(s) under section 6320 and/or 6330 (notice of determination) with respect to petitioner's unpaid liability for 1998 (notice of determination with respect to petitioner's unpaid liability for 1998).[3] An attachment to that notice stated in pertinent part:

> **Verification of Legal and Procedural Requirements**
>
> The Secretary has provided sufficient verification that the requirements of any applicable law or administrative procedure have been met.
>
> Certified account transcripts, Forms 4340, were requested and reviewed along with the administrative return file for 1998, which included the civil penalty work papers. * * *
>
> *        *        *        *        *        *        *
>
> The collection due process and equivalency hearings

---

[3]On July 11, 2002, the Appeals Office also issued to petitioner (1) a notice of determination with respect to the frivolous return penalty regarding petitioner's 1998 return and (2) a decision letter concerning equivalent hearing under sec. 6320 and/or 6330 (decision letter) with respect to the notice of intent to levy issued to petitioner with respect to the frivolous return penalty regarding petitioner's 1998 return (decision letter with respect to the frivolous return penalty regarding petitioner's 1998 return).

were held on May 16, 2002 * * *.  The taxpayer was advised prior to the hearing by letter that no audio recording or stenographic recording of the hearing would be permitted per a directive issued by the Acting Chief of Appeals dated May 2, 2002.

Settlement Officer Rene Swall has had no prior involvement with respect to these liabilities.

**Issues Raised by the Taxpayer**

The taxpayer checked both blocks on the Form 12153 and states, "see attached letter".  Attached is a copy of the Notice of Federal Tax Lien (NFTL), the Letter 3172, and several pages of non-filer arguments.  As part of the taxpayer's argument, she asks for verification from the secretary, proof of the assessments, [and] a copy of the statutory notice of deficiency.  The taxpayer further claims that there is no underlying statutory liability in connection with the income taxes at issue, that there is no statute requiring her to pay the taxes at issue, and that no law authorizes the Service to claim that she owes more income tax than the "zero" reported on her return.  In addition the taxpayer states that she did not receive a notice and demand for payment per IRC §6331.

Certified transcripts, Forms 4340, for both periods were provided to the taxpayer prior to the hearing. The taxpayer was advised by letter that these transcripts meet the verification requirements under IRC §6330(c)(1). * * *

At the hearing the taxpayer raised the issue of audio recording and was advised again that the audio recording would not be allowed. * * *

    *       *       *       *       *       *       *

I attempted to review the Form 4340 transcripts and the administrative file with the taxpayer, which included the tax return filed and the statutory notice of deficiency that was sent and received.  The taxpayer stated that what I provided her as evidence of the statutory notice of deficiency was only a "letter".  The taxpayer was advised that she could not raise the issue of the underlying liability as she had received the statutory notice of deficiency, and had in fact responded to it

with additional frivolous arguments.  The taxpayer is now precluded from raising this issue at the collection due process hearing.  Collection alternatives could not be discussed with the taxpayer, as the taxpayer is not in filing compliance, nor did the taxpayer attempt to complete the financial statement that was mailed to her prior to the hearing.  The taxpayer asked for the cite that makes her liable to pay the taxes and continued to raise only frivolous arguments.  The hearing was concluded.

The taxpayer does not believe that wages are income or that the tax laws apply to her.  I advised the taxpayer of recent court case decisions where sanctions were imposed for bringing the same type of arguments and attempted to provide the taxpayer with copies of recent cases on T. Pierson and R. Davis as well as Publication 2105, Why Do I Have to Pay Taxes, and a handout, The Truth About Frivolous Tax Arguments.  The taxpayer refused to accept these from me.

  *       *       *       *       *       *       *

The taxpayer raised no other non-frivolous issues.

**Balancing the Need for Efficient Collection with Taxpayer Concerns**

The requirements of all applicable laws and administrative procedures have been met.  The courts have previously addressed the taxpayers' arguments, and Appeals does not have the authority for reconsideration of the matters.

The assessments are valid and the Service followed proper procedures in making these assessments.  For the civil penalty to apply the individual's conduct must be due in part to a position, which is frivolous, or a desire (which appears on the return) to delay or impede the administration of Federal income tax laws.  Income reported to the Service verifies that the taxpayer had sufficient income that would require her to file a return.  The taxpayer was provided an opportunity to file a correct return, but instead responded with frivolous arguments.  The taxpayer received her required notices.  The filing of the NFTL was appropriate to protect the Government's interest.  In addition, the issuance of the notice of intent to levy was appropri-

ate on the civil penalty assessment. No collection alternatives could be discussed as the taxpayer is not in filing compliance and the taxpayer only continued to raise frivolous arguments.

Given the taxpayer's history of non-compliance, I believe that collection action in the form of levy should be allowed to proceed. Lacking the taxpayer's cooperation, the proposed collection action balances the need for efficient collection of taxes with the taxpayer's legitimate concern that any collection action be no more intrusive than necessary.

### Discussion

The Court may grant summary judgment where there is no genuine issue of material fact and a decision may be rendered as a matter of law.[4] Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). We conclude that there is no genuine issue of material fact regarding the questions raised in respondent's motion.

With respect to petitioner's taxable year 1998, petitioner received a notice of deficiency, but she did not file a petition with respect to that notice. On the instant record, we find that petitioner may not challenge the existence or the amount of

---

[4]The only questions raised in respondent's motion relate to petitioner's unpaid liability for 1998 over which we have jurisdiction and do not relate to the frivolous return penalty regarding her 1998 return over which we do not have jurisdiction. In this connection, on Feb. 6, 2003, the Court issued an Order granting respondent's motion to dismiss this case for lack of jurisdiction insofar as petitioner sought review of either the notice of determination with respect to the frivolous return penalty regarding petitioner's 1998 return or the decision letter with respect to the frivolous return penalty regarding petitioner's 1998 return.

petitioner's unpaid liability for 1998. See sec. 6330(c)(2)(B); Sego v. Commissioner, 114 T.C. 604, 610-611 (2000); Goza v. Commissioner, 114 T.C. 176, 182-183 (2000).

Where, as is the case here, the validity of the underlying tax liability is not properly placed at issue, the Court will review the determination of the Commissioner of Internal Revenue for abuse of discretion. Sego v. Commissioner, supra at 610; Goza v. Commissioner, supra at 181-182.

As was true of petitioner's attachment to her 1998 return, petitioner's April 15, 2000 letter, petitioner's attachment to her Form 12153, and petitioner's May 7, 2002 letter, petitioner's response contains contentions, arguments, statements, and re-quests that the Court finds to be frivolous and/or groundless. To illustrate, petitioner appears to argue that she did not receive proper notice and demand under section 6303(a) because, according to petitioner, respondent must use Form 17 in issuing such notice and demand.

We reject petitioner's argument that respondent did not issue the notice and demand required by section 6303(a). Form 4340 with respect to petitioner's taxable year 1998 shows that respondent sent petitioner a notice of balance due on July 24, 2000, the same day on which respondent assessed petitioner's tax, as well as any penalties and interest as provided by law, for her taxable year 1998. A notice of balance due constitutes the

notice and demand for payment under section 6303(a).  Craig v. Commissioner, 119 T.C. 252, 262-263 (2002).  Respondent is not required to use Form 17 as the notice and demand for payment. E.g., Keene v. Commissioner, T.C. Memo. 2002-277; Tapio v. Commissioner, T.C. Memo. 2002-141.

As a further illustration of the frivolous and/or groundless nature of petitioner's position in this case, petitioner contends in petitioner's response that the settlement officer failed to obtain verification that the requirements of any applicable law or administrative procedure have been met, as required by section 6330(c)(1).  In this regard, petitioner contends that the settlement officer improperly relied on Form 4340 to meet the verification requirement of section 6330(c)(1).

The record establishes that the settlement officer obtained verification from the Secretary that the requirements of any applicable law or administrative procedure were met, and we reject petitioner's contention to the contrary.  As for the settlement officer's reliance on Form 4340, at the Appeals Office hearing, the settlement officer relied on, and gave petitioner, Form 4340 with respect to petitioner's taxable year 1998. Section 6330(c)(1) does not require the settlement officer to rely on a particular document to satisfy the verification requirement imposed by that section.  Craig v. Commissioner, supra at 261-262.  Nor does section 6330(c)(1) require the settlement

officer to provide petitioner with a copy of the verification upon which the settlement officer relied.  Id. at 262.  Form 4340 is a valid verification that the requirements of any applicable law or administrative procedure have been met.  Id.  Petitioner has not shown any irregularity in respondent's assessment procedure that would raise a question about the validity of the assessment or the information contained in Form 4340 with respect to petitioner's taxable year 1998.  We hold that the assessment with respect to petitioner's taxable year 1998 was valid and that the settlement officer satisfied the verification requirement of section 6330(c)(1).  See id.[5]

Based upon our examination of the entire record before us, we find that respondent did not abuse respondent's discretion in determining to proceed with the collection action as determined in the notice of determination with respect to petitioner's unpaid liability for 1998.

In respondent's motion, respondent requests that the Court require petitioner to pay a penalty to the United States pursuant

---

[5]In petitioner's response, petitioner also argues that "Appeals personnel denied Petitioner the right to protect her rights in total disregard for the Taxpayer Bill of Rights, Publication 1 and Petitioner's constitutional right to protect oneself."  That is because, according to petitioner, the Appeals Office denied her request to record her Appeals Office hearing.  However, petitioner admits that she "did in fact tape the CDP hearing", and we shall not address petitioner's argument about the Appeals Office's refusal to permit her to record her Appeals Office hearing.

to section 6673(a)(1). Section 6673(a)(1) authorizes the Court to require a taxpayer to pay to the United States a penalty in an amount not to exceed $25,000 whenever it appears to the Court, inter alia, that a proceeding before it was instituted or maintained primarily for delay, sec. 6673(a)(1)(A), or that the taxpayer's position in such a proceeding is frivolous or groundless, sec. 6673(a)(1)(B).

In Pierson v. Commissioner, 115 T.C. 576, 581 (2000), we issued an unequivocal warning to taxpayers concerning the imposition of a penalty under section 6673(a) on those taxpayers who abuse the protections afforded by sections 6320 and 6330 by instituting or maintaining actions under those sections primarily for delay or by taking frivolous or groundless positions in such actions.[6]

In the instant case, petitioner advances, we believe primarily for delay, frivolous and/or groundless contentions, arguments, statements, and requests, thereby causing the Court to waste its limited resources. We shall impose a penalty on petitioner pursuant to section 6673(a)(1) in the amount of $1,500.

We have considered all of petitioner's contentions, argu-

---

[6]The record in this case reflects that the settlement officer attempted to give petitioner, inter alia, a copy of the Court's opinion in Pierson v. Commissioner, 115 T.C. 576 (2000), which she refused to accept.

ments, statements, and requests that are not discussed herein, and we find them to be without merit and/or irrelevant.

To reflect the foregoing,

<u>An appropriate order granting respondent's motion and decision will be entered for respondent</u>.